IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

ROY NEAL,

Defendant.

No. CR 18-00457 WHA

**ORDER GRANTING MOTION TO SUPPRESS**

## INTRODUCTION

In this firearm prosecution, defendant moves to suppress evidence obtained following a traffic stop. An evidentiary hearing is unnecessary and one has not been requested by the government. For the reasons stated below, the motion to suppress is **GRANTED**.

## STATEMENT

This order takes as true the facts set forth in the government's opposition. On August 3, 2018, around 12:30 a.m., defendant Roy Neal drove past Crescent City Police Officer Jonathan Cooper's parked patrol vehicle. As defendant drove by, Officer Cooper observed that the vehicle lacked license plates. Officer Cooper accordingly initiated a traffic stop, stopped behind defendant's vehicle, and approached on foot. As he approached, he observed an Oregon temporary vehicle permit taped in the rear driver's side window of the car. He also observed defendant remove and hand his jacket to the passenger (later identified as defendant's wife) (Cooper Decl. ¶¶ 4–5, 8).

Skeptical of the permit's validity and suspicious based on the removal of the jacket, Officer Cooper continued the traffic stop by making contact with defendant and asking about the temporary permit. At Officer Cooper's request, defendant provided his Oregon driver's license but did not provide proof of insurance. Dispatch reported that defendant had a valid license and lacked any outstanding warrants. Dispatch also reported that there was no record on file for the permit number relayed by Officer Cooper. Around this time, Officer Cooper noticed defendant shifting in his seat. Still suspicious, Officer Cooper asked defendant's wife for her identification card. After checking with dispatch, Officer Cooper learned that Ms. Neal had an outstanding warrant. He then asked Ms. Neal to step out of the car and placed her under arrest. While Officer Cooper walked Ms. Neal to the police car in handcuffs, defendant got out of the car and began rummaging in the truck (*id.* ¶¶ 6–11).[*]

Around this time, CCPD Officer Anthony Lopez, a POST-certified K9 officer, arrived with K9 Kai. Officer Lopez ordered defendant to sit on the curb. Officer Cooper still planned (erroneously) on citing defendant for driving without valid tags and for not possessing proof of insurance. Because Officer Cooper had just arrested Ms. Neal and had not yet issued the traffic citation, he asked Officer Lopez to have Kai perform a dog sniff for narcotics. Officer Lopez and Kai completed the dog sniff of the car in approximately one minute (less than four minutes after their arrival on the scene). Kai alerted on the car, indicating the presence of narcotics. A subsequent search of defendant's car and jacket revealed drug paraphernalia, approximately 4.9 grams of methamphetamine and 2.4 grams of heroin, and two loaded semi-automatic rifles with extended magazines (Cooper Decl. ¶¶ 11–20; Lopez Decl. ¶¶ 3–15).

In September 2018, a grand jury returned an indictment charging defendant with two counts of being a felon in possession of a firearm and ammunition, in violation of Section 922(g) of Title 18 of the United States Code. Defendant now moves to suppress the evidence obtained during the traffic stop, including the firearms and ammunition that form the basis of

---

[*] Although the temporary permit was, in fact, valid, Officer Cooper was unable to determine this fact during the traffic stop. Prior to 2019, Oregon did not enter its temporary permits into the National Law Enforcement Telecommunications System, resulting in dispatch receiving a "not on file" response regardless of whether or not Officer Cooper called in the correct permit number (which he did not) (Dykman Decl. ¶¶ 9–12).

2

the indictment (Dkt. Nos. 1, 27). This order follows full briefing and oral argument. The government has not requested an evidentiary hearing. In any event, because defendant's motion must be granted even under the government's version of events, no evidentiary hearing is needed.

**ANALYSIS**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The government bears the burden of proving that a warrantless search or seizure falls within an exception to the warrant requirement. *United States v. Scott*, 705 F.3d 410, 416–17 (9th Cir. 2012). To conduct a traffic stop, an officer must have "reasonable suspicion" of illegal activity. *United States v. Choudhry*, 461 F.3d 1097, 1100 (9th Cir. 2006). Reasonable suspicion of a traffic violation is sufficient. *Ibid*. This order fully credits Officer Cooper's testimony that he observed the lack of license plates (but not the temporary permit) on defendant's car when he initiated the traffic stop. Officer Cooper therefore had reasonable suspicion of a Vehicle Code violation at the time he stopped defendant's car.

As Officer Cooper admits, however, he saw the temporary permit once he approached defendant's car on foot. Importantly, an "officer who sees a vehicle displaying a temporary operating permit in lieu of license plates may not stop the vehicle simply because he or she believes that such permits are often forged or otherwise invalid." *People v. Hernandez*, 45 Cal. 4th 295, 297 (2008). To the extent defendant's detention was based solely on Officer Cooper's previous encounters with forged permits or his general belief that temporary permits are "easily forged," the officer lacked reasonable suspicion that the *particular permit* was invalid. *Ibid.* And, although Officer Cooper noted that in his experience "vehicles displaying valid temporary permits typically also display permanent license plates," the government does not argue that defendant's vehicle should have also displayed expired plates and fails to explain how a lack of expired plates gives rise to reasonable suspicion of crime. Officer Cooper therefore lacked reasonable suspicion of a traffic violation once he observed the permit prominently displayed in defendant's rear window. At that point, he should have waved defendant on his way.

3

Recognizing as much, the government argues that Officer Cooper had an independent basis for the detention. Although "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures," *Rodriguez v. United States*, 135 S. Ct. 1609, 1612 (2015), law enforcement may prolong a traffic stop where "the prolongation itself is supported by independent reasonable suspicion." *United States v. Evans*, 786 F.3d 779, 788 (9th Cir. 2015). Here, the government argues that Officer Cooper had reasonable suspicion to further investigate defendant because he observed defendant "remove and hand his jacket to the passenger" (Cooper Decl. ¶ 8). This order concludes that, given the totality of the circumstances, this observation did not give rise to reasonable suspicion.

"Reasonable suspicion 'exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for *particularized* suspicion.'" *Evans*, 786 F.3d at 788 (citation omitted) (emphasis in original). But, "innocuous conduct does not justify an investigatory stop unless there is other information or surrounding circumstances of which the police are aware, which, when considered along with the otherwise innocuous conduct, tend to indicate criminal activity has occurred or is about to take place." *United States v. Montero-Camargo*, 208 F.3d 1122, 1130 (9th Cir. 2000). According to Officer Cooper, defendant's handing off of the jacket was suspicious because "there would normally be no reason for the driver to remove his jacket and give it to a passenger during a traffic stop unless there was something in the jacket that the driver didn't want me to see" (Cooper Decl. ¶ 8). This order disagrees. Officer Cooper's belief amounted to nothing more than an "unparticularized suspicion or 'hunch'" that cannot justify a detention under the Fourth Amendment. *See Terry v. Ohio*, 392 U.S. 1, 27 (1968).

In sum, once Officer Cooper observed the temporary permit in defendant's window, he lacked reasonable suspicion to continue the traffic stop. Evidence obtained as the result of an unconstitutional seizure "is ordinarily tainted by the prior illegality and thus inadmissible, subject to a few recognized exceptions." *United States v. Gorman*, 859 F.3d 706, 716 (9th Cir.

2017) (citation and internal quotation marks omitted). All fruits of the unlawful detention must therefore be suppressed unless an exception to the exclusionary rule applies.

Here, the government argues that Officer Cooper's discovery of an arrest warrant for Ms. Neal constituted an intervening circumstance which interrupted the unconstitutional conduct and the discovery of the contraband. "[U]nder the 'attenuation doctrine,' evidence is admissible when 'the connection between the illegality and the challenged evidence' has become so attenuated 'as to dissipate the taint caused by the illegality.'" *Id.* at 718 (citation omitted). In determining whether evidence is too attenuated from illegal conduct, courts look to three factors: (1) "[t]he temporal proximity" between the unconstitutional conduct and the discovery of evidence, (2) the presence of intervening circumstances, and (3) "the purpose and flagrancy of the official misconduct." *Brown v. Illinois*, 422 U.S. 590, 603–04 (1975). All agree that the first factor weighs in favor of suppression. This order agrees with the government that the officers' conduct was not flagrant and that therefore the third factor weighs against suppression. As to the second factor, this order concludes that the discovery of the warrant for Ms. Neal's arrest did not constitute an "intervening circumstance" and that this factor therefore weighs in favor of suppression, as now discussed.

The government relies on *Utah v. Streiff*, 136 S. Ct. 2056 (2016). There, the Supreme Court held that the attenuation rule applied where the officer made an unconstitutional investigatory stop, learned during that stop that the defendant was subject to a valid arrest warrant, then arrested the defendant and seized incriminating evidence during a search incident to arrest. In finding that the arrest warrant attenuated the connection between the unlawful stop and the evidence seized during the search incident to arrest, the Supreme Court explained that the defendant's arrest "was a ministerial act that was independently compelled by the pre-existing warrant." And, notably, "once Officer Fackrell was authorized to arrest Strieff, it was undisputedly lawful to search Strieff as an incident of his arrest to protect Officer Fackrell's safety." *Id.* at 2062–63. Under those circumstances, the second factor favored application of the attenuation doctrine to permit admission of the evidence. *Ibid*.

The facts presented in this case are markedly different. The discovery of the valid warrant for Ms. Neal's arrest was not an intervening circumstance that "broke" the causal chain between the initial, unlawful detention and the discovery of the evidence in defendant's vehicle. To be sure, *Strieff* would have likely permitted the admission of any evidence obtained during a search of Ms. Neal incident to *her* arrest. But unlike the search at issue in *Strieff*, here, the search of defendant's car was not spurred by Ms. Neal's arrest. No search of the vehicle incident to her arrest occurred. Nor could it have, as a search of a vehicle incident to an arrest is unlawful where, as here, the arrestee is secured and cannot access the interior of the vehicle and it is not reasonable to believe that evidence of the arrest (a warrant for driving on a suspended license) might be found in the vehicle. *Arizona v. Gant*, 556 U.S. 332, 335 (2009).

The second factor of the attenuation test requires consideration of whether intervening circumstances "purge the taint" of the unlawful detention. *Gorman*, 859 F.3d at 718. This order concludes that the evidence seized from the car remained connected to defendant's initial unlawful detention such that the unlawful conduct remained the "cause" of the dog sniff and search. The discovery of the warrant for Ms. Neal and her arrest had no lawful connection to the search. It was not an "intervening circumstance." The second *Brown* factor accordingly weighs in favor of suppression in this case and the attenuation exception does not apply.

Finally, to the extent the government argues otherwise, this order finds that the exclusion of the evidence seized from defendant's car will meaningfully deter future Fourth Amendment violations and that such deterrence benefits outweigh the resulting social costs of exclusion. *See Davis v. United States*, 564 U.S. 229 (2011).

**CONCLUSION**

For the reasons stated above, defendant's motion to suppress is **GRANTED**. A status conference is **SET** for **APRIL 23 AT 2:00 P.M.**

**IT IS SO ORDERED.**

Dated: April 7, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

6